**Clarence WILLIAMSON, Plaintiff–Respondent,**

v.

**Tom COX, Personal Representative of the Estate of Dennis McHatton, Defendant–Appellant.**

**No. 17985.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 6, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Stephen E. Walsh, Gerald L. Meyr, Summers, Walsh, Pritchett & Blaich, P.C., Poplar Bluff, for plaintiff-respondent.

Jerry M. Merrell, Keith D. Sorrell, Spain, Merrell and Miller, Poplar Bluff, for defendant-appellant.

PREWITT, Judge.

Plaintiff sought damages for personal injuries following his fall through an opening in the roof of a building under construction. A jury verdict found him entitled to $55,000 and judgment was entered in accordance with the verdict. Defendant appeals.[1]

Defendant asserts in his first point that the trial court erred in denying a motion for directed verdict at the close of all evidence. Defendant contends that there was no duty of care toward plaintiff because McHatton "did not have control or possession of the premises ... did not control the actions of Clarence Williamson, and plaintiff was aware of any dangerous condition that may have existed".

---

1. Plaintiff sued four entities including David Hill and "McHatton Construction Company, Inc." Later, plaintiff's attorneys sought to substitute the personal representative of the estate of Dennis McHatton for "McHatton Construction Co." Apparently, although the record is not clear, Dennis McHatton operated McHatton Construction Company as a sole proprietorship. Whether the motion for substitution was ruled is not shown in the record, but the attorneys previously representing "McHatton Construction Co., Inc." thereafter appeared for the representative of Dennis McHatton's estate. As the parties treat the personal representative as a proper party to the case, in this opinion the court assumes he was properly substituted.

In determining whether a trial court errs in overruling a motion for directed verdict, an appellate court views the evidence most favorable to the plaintiff and gives plaintiff the benefit of all reasonable inferences which the evidence tends to support and disregards defendant's evidence which does not aid plaintiff's case. *Rauh v. Interco, Inc.,* 702 S.W.2d 497, 499 (Mo. App.1985).

The facts relating to the fall may be summarized as follows. Plaintiff was employed by a general contractor who agreed to construct a Wall Mart store in Poplar Bluff. He worked as a general laborer. Dennis McHatton was a subcontractor, whose responsibilities included cutting openings in the roof for air conditioning units.

On November 27, 1989, a McHatton employee, Clifford Allen Welcher, Jr., was cutting an opening in the metal roof for the placement of an air conditioning unit. The hole was approximately 3 feet by 6 feet. Also, that day concrete was poured on the floor of the building. It started to rain, and rain came through the roof splattering the concrete.

The general contractor determined that it was necessary to prevent the rain from hitting the concrete. To do so the assistant supervisor for the general contractor, David Hill, took a crew to the roof and started covering it with plastic sheeting. Plaintiff was one of the employees who went to the roof. Welcher was in the process of cutting and welding angle iron to the roof in order to frame the hole he had just cut. Had he gotten that done, his next step was to affix to the roof a metal curb 18 inches high. Because the roof was being covered with the sheeting, he did not place the metal curb and withdrew from the area where he was working.

The plastic was stretched out to cover the roof, its sheets measuring 100 feet by 50 feet. High wind made the covering difficult. Plaintiff was gathering and placing pieces of lumber on the plastic to keep it on the roof. Two other employees of the general contractor picked up a 3 foot by 15 to 20 foot steel panel to place over the hole and had trouble controlling the panel because of the wind. They requested plaintiff's help, and as he moved toward them, he stepped into the opening then covered by black plastic. He fell approximately 20 feet to the ground sustaining serious physical injuries.

*Mino v. Porter Roofing Co.,* 785 S.W.2d 558, 561 (Mo.App.1990), set forth the general propositions which control the liability of subcontractors to employees of other contractors injured on a construction job:

> The contractor is liable where he is in control of and has charge of the work and the dangerous condition is attributable to wrongful or negligent acts of his employees while the work is in progress. [citing case] If the instrumentality causing the harm is under the control of the defendant contractor and the plaintiff is injured while in a work area common to employees, the defendant owes a duty of care to avoid causing such injury. [citing case] A contractor who supplies equipment or devices which are to be used by employees of others on the construction job, owes a duty to make the device safe for its intended use. [citing case]

Defendant primarily relies upon *Mino,* but we do not believe it is controlling. In that case there was no evidence the defendant caused the dangerous condition. Here, it is undisputed that a McHatton employee cut the hole and without protesting, stood by to allow it to be covered without any protection for those that may be moving upon the plastic. McHatton is liable for the negligence of his employees and had a duty to exercise reasonable care not to cause injury to employees of others, including the general contractor. *Killian v. Wheeloc Engineering Co.,* 350 S.W.2d 759, 762 (Mo.1961).

Under these circumstances, as defendant claims, McHatton, as a subcontractor, may have been required to relinquish the area around the opening to the control of the general contractor. However, the jury had a basis to find that McHatton's employee, Welcher, before he left the area should have taken steps to cover, barricade

or warn those on the roof, or request of the general contractor's assistant supervisor that this be done before the opening was covered with plastic.

Appellant further contends under this point that a possessor of land is subject to liability for a dangerous condition only if he either fails to make the condition reasonably safe or give a warning and that neither duty exists where the dangerous condition is known or obvious to the plaintiff. The cases cited by appellant no longer state the law.

■ If plaintiff was aware of the opening, that does not prevent his claim from being submitted to the jury. Cases relied on by appellant indicating to the contrary were previous to *Gufstafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), as applied in *Cox v. J.C. Penney Co.*, 741 S.W.2d 28 (Mo. banc 1987). Since those decisions a plaintiff's knowledge of the danger is considered in determining his comparative negligence rather than in determining the duty of defendant. *Luthy v. Denny's, Inc.*, 782 S.W.2d 661, 664 (Mo.App.1989). Point one is denied.

We consider the remaining points of appellant, except for Point IV, as without merit and precedential value. They are denied without further discussion. Point IV does have merit.

In Point IV appellant states the trial court erred "in denying the defendant's motion to deduct from the judgment a settlement from co-defendant David Hill in the amount of $29,500.00 because settlements from co-defendants received by plaintiff should reduce the amount of the trial court judgment in that Clarence Williamson settled his claim against co-defendant David Hill for a benefit of $29,500.00 in return for a complete release from liability given to David Hill."

David Hill was the assistant superintendent of the general contractor, originally a defendant to this action. Through their attorneys, plaintiff and Hill agreed that Hill's motion for summary judgment should be sustained in return for Hill's insurer waiving a portion of its subrogation claim. No money exchanged hands as a part of the agreement.

CNA Insurance Company provided workers compensation insurance for the general contractor and had made payments to or for plaintiff of approximately $56,000. CNA also provided liability coverage protecting Hill and employed the attorneys who represented him in this action. The undisputed agreement which allowed Hill to have judgment rendered in his favor was set forth in a letter from the attorney representing Hill to plaintiff's attorney. That letter states that it was agreed that the judge grant judgment for Hill which "will terminate all controversies between your client and David Hill." The letter further provided:

As an inducement to this transaction, CNA, as the insurance subrogation carrier, has agreed that in the event of settlement or judgment, if your client receives between $0 and $25,000, it will waive its Worker's Compensation lien; if your client receives between $25,000 and $65,000, it will receive as its subrogation share $.15 of every dollar; and on any recovery over $65,000 CNA will waive its compensation lien.

Thereafter, summary judgment was entered for Hill. As earlier mentioned a jury then determined plaintiff's damages at $55,000. The amount of subrogation which was waived is not clear, but the parties stipulated that $29,500 was the amount by which plaintiff benefited from the agreement.

The first issue addressed regarding this point is plaintiff's contention that the credit issue was waived because it was not presented to the trial court in defendant's after-trial motion. In support of this contention plaintiff primarily relies upon *Fahy v. Dresser Industries, Inc.*, 740 S.W.2d 635, 644 (Mo. banc 1987), cert. denied, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988). The principal opinion in that case does state that a contention that the judgment should have been reduced by the amount of a settlement was not preserved for appellate review because it was not presented to the trial court in a motion for new trial. Two judges concurred with the author of the

**99**

opinion and one judge concurred in the result. Two judges dissented and one concurred in part of the opinion, but dissented in the statement that the point was not preserved.

Ordinarily, an opinion of the Missouri Supreme Court is controlling under Mo. Const. art. V, § 2, but an opinion which lacks concurrence of a majority of the judges except as to the result has value only as instruction. *Brown v. H & D Duenne Farms, Inc.*, 799 S.W.2d 621, 628 (Mo.App.1990). See also *Musgraves v. National Dairy Products Corp.*, 400 S.W.2d 93, 96 (Mo.1966).[2]

Receiving such a credit is not a matter of trial error. The jury is not to be instructed regarding the settlement and the trial judge is to credit the defendant in the judgment. See M.A.I. 1.06 (4th ed. 1991) and the Committee Comments following. This issue was not one related to defendant's motion for judgment notwithstanding the verdict as it only applied if judgment was rendered in accordance with the verdict. It is not related to trial error. Nor would such error require a new trial and it could not be corrected by the granting of a new trial. See *Fahy* at 644 (Blackmar, J., concurring in part and dissenting in part). The contention was timely presented to the trial court following the verdict and properly preserved for review.

Where worker's compensation benefits are paid the payor is entitled to reimbursement, at least in part, from recovery against a third party. See § 287.150, RSMo 1986 (since amended, see RSMo Supp.1991); *State ex rel. Hwy. & Tr. Com'n v. Copeland*, 820 S.W.2d 80 (Mo. App.1991). There is no contention here that CNA would not have been subrogated for the benefits it paid plaintiff should there have been a recovery against Hill or others.

Section 537.060, RSMo 1986 states in part that "an agreement by release, covenant not to sue or not to enforce a judgment ... shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater." Under MAI 1.06 (4th ed. 1991), in a jury trial, the trial judge is to reduce the amount if there has been a payment which should be credited. *Allen v. Foster*, 668 S.W.2d 277, 280 (Mo.App. 1984).

Plaintiff settled with Hill and received the benefit of $29,500. Under the contents of the letter Hill was released, and as a part of that agreement, plaintiff received a monetary benefit. The trial court should have credited defendant with this amount.

The portion of the judgment finding for plaintiff is affirmed and the portion of the judgment setting forth the amount of plaintiff's recovery is reversed. The cause is remanded for the trial court to enter judgment in favor of plaintiff and against appellant for $25,500. Under Rule 78.04 judgment is to "be entered as of the date of the verdict".

FLANIGAN, C.J., and MONTGOMERY, P.J., concur.

**2.** For an interesting view of the effect of plurality decisions, see Ken Kimura, Note, *A Legitimacy Model for the Interpretation of Plurality Decisions*, 77 Cornel L.Rev. 1593 (1992).